Good morning, Your Honors. Mary Ann Cozella on behalf of plaintiff appellant John Wolfe, Bankruptcy Trustees, and the Athenese, Savvas and Irene Roditas. It's just the Wolfes, right? I'm sorry, John Wolfe is the Bankruptcy Trustee. I mean, not the Wolfes, I'm sorry, it's just the... Roditas family, yes, Savvas and Irene Roditas. Thank you. And there's just a few points I wanted to bring to the forefront. I know the Court's well aware of what's going on in the case. When I was looking at this case, I was trying to determine why the City of Anaheim had not made a bigger deal about the Communications, I'm sorry, Community Communications v. Boulders case. That's the one where the City of Boulder was held to not enjoy state immunity because it was a Home Rule City. And when I look more closely, I realize that it is the same. A Charter City, which is what Anaheim is, and we've attached a copy of the first page of the Charter, number 6, to our appellant's opening brief. It's synonymous, so far as I can tell, with the Charter City. And the Boulder Communications case has excellent language about why the state antitrust immunity does not apply to Charter Cities. And it's a U.S. Supreme Court case. It's confirmed in TWAWI, which is a 1990 case, which took place well after the Local Government Antitrust Immunity Act was enacted in 1984. And it's cited later, also in the Sakamoto case. So, so far as I can tell, really the immunity is not going to apply anyway. So some of that should be a done issue. There's wonderful language in the Boulder case about that. About why all the language about clearly articulated policy and whether or not it has to be actively supervised by the state and so forth does not apply because the city has said, we're going to rule our own borders, we're going to take this, we're sovereign. So it's your contention that the Local Government Antitrust Act does not apply here because Anaheim is a Charter City? Yes, so far as I can tell. Now, what's the case authority you have for that? It's the Community Communications v. Boulder case and the progeny. It's a 1982 case, and we've cited it. The city... Could you give that to me again, please? Yes, it's Community Communications v. Boulder, and it's 1982, 455 U.S. 40. 1982, 4 what? 455 U.S. 40, 4-0. And you contend that that stands for the proposition that when you have a Charter City, that the Local Government Antitrust Act does not apply? That's correct. Does the court reason about that? Yes, it does. The Boulder case has wonderful language in it. What about the standing issue? Your clients didn't apply. Isn't that a requirement for standing in this kind of an action? I don't believe it is, Your Honor. We've relied on, for Section 1983, that part of our claim, the Patsy case and its progeny, which clearly says you don't have to pursue an administrative remedy. Then the city... Well, this is not just even an administrative remedy. They simply didn't apply for it. I mean, who knows whether they ever would have applied? I think... All right, I'm not sure, Your Honor, what you meant by that comment. I think maybe you meant... My understanding is your clients had the taxicab operation before the city converted into a franchise operation, right? That's not technically correct, Your Honor. Okay, what did they have before? Okay, they had nothing for years and years, and they applied, applied, applied. Then the California Court of Appeal finally overturned the state court 1094.5 CCP ruling, and then said, guess what, now we're going to order the trial court to give you these permits. But that ruling didn't come down to December of 2000. And the franchise application period was already closed. It was only one month, later extended 10 days. It went from September 20th of 19... I'm sorry, 2000 to October 20th. At that point, then it was too late for my clients to apply. Okay, you're saying they didn't apply because they didn't know they had any right to apply, in effect. No, that's not what I'm saying, Your Honor, if I may. We developed the futility argument, and my clients didn't apply because... a couple of reasons. One, they felt it was absolutely futile to apply. Okay, but you have the burden of proof on the futility argument, do you not? That's correct, that's correct. And how have you shown, in this case, that argument? It seems to me we're stuck by what the state court of appeal said, which says the record was remarkably free of anything that shows any animus towards South Coast cab. Are we bound by that? No, this court is not bound by that. Okay. Everything we have here is de novo review, including not only the most obvious points, but the review of interpretation of state law, of the constitutionality of state law. Those comments that were cited... What about on the collateral estoppel concept, though? Well, a few things. First, this court is not bound by the pronouncements of the state court on Sherman Act claims, which it never had made. It never had jurisdiction under the Sherman Antitrust Act, period. So that should all be out the door. I know, but it also made findings under... It said it also made findings under state law. The state law findings, Your Honor, that were made were on the basis of a higher burden of proof. It was on a preliminary injunction motion where we had to show clear and convincing evidence. It was not on this preponderance of the evidence. It was not on a de novo review. It doesn't translate into that. The court made certain comments, and I don't even know that I would say they're findings. They're really more like surpluses. The court said, well, it kind of went on to say all these other things, a lot of which was not in the record, by the way, and which was an error of factual finding. I understand opinions sometimes end up with those things in there. But this court is not bound by those things that were not actually determined and necessarily litigated. They were not litigated. Let's argue and I'll take your point. Nonetheless, your client did not apply for a franchise. That's correct. You agree with that, right? I agree. Okay. You clearly have the burden to show futility. What have you shown on the record that indicates that to have applied for a franchise would have been futile? In the complaint itself, I'm not talking about the complaint. I'm talking about beside the complaint. What is there in the record that shows that it would have been futile for you to apply for this? In the record, is the court referring to the whole administrative record? Whatever you are citing to meet your burden. Your Honor, it's replete with evidence of that. My client applied for permits for years and years and years, for like 10 years, and they went to probably at least 20 hearings. We showed the changes, the progression, which is a real important thing at this point, of the law in Anaheim. How they changed the law repeatedly. They started with a dichotomy. If you didn't have permits to begin with and you're a company, a new company coming in, you had to run the gauntlet of showing need and necessity and all these and make an application to the city council. My client made dozens of those. I think four formal applications over a period from 1998 through and overlapping onto the franchise period because they didn't have the option at that point of applying. The city of Anaheim then changed the rule and they said, oh well, it's being challenged by these guys and maybe it is kind of unconstitutional so they changed it to say the existing operators also had to apply before the city council instead of just getting the okay from the chief of police. But still, once you're in there, if you wanted more permits, all you had to do was just ask the chief of police and the code enforcement officer. Then the city council had to approve it but it always approved it. Then we have wonderful evidence that's in the record that says that whenever a newcomer such as South Coast Cab was the company, a real party in interest, whenever they would apply then they would call up the existing people to say a competitor is putting in a request for permits. Do you want to come try to do this so you can keep out competition? Oh sure, we'll come in. There's no need for anyone new and my client was kept out over and over. But you won on that. Wasn't that the basis of the judgment in your favor? Your Honor, you're referring to the state court of appeals, the first opinion. In the end, what happened was we did win on that aspect but unfortunately, because of the progression and the timing of everything, by the time we won on that the franchise was already it wasn't in place, but it was done and they would not reopen it. Did you apply to reopen it? We asked several times. Is there something in the record on that? Yes, there is. In fact, we attached to the appellant's opening brief excerpts and also in our excerpts themselves of testimony from the trial from the code enforcement officers in particular John. Are you talking about reopening the permit process? No, for the franchise. Because at that point my client had the permits. The franchise, the criteria for it gave grandfather rights advantages to the two companies. My clients didn't apply because number one, it was futile in their opinion and I believe so as well. But that utility argument was rejected not just in the preliminary injunction appeal, but on the final appeal. But Your Honor, the final appeal in the state court was only on the basis of that preliminary injunction. In fact, in one of the later... I don't understand your argument. The final appeal was from a granting of a motion for summary judgment. I don't believe that that's accurate. I may be mistaken, but in the state court... I'm talking about 2004 appeal. That ended the case, didn't it? It did. And so they made a finding that it wasn't futile. And so aren't you bound by that? No, the court had bifurcated the two parts. The court then granted judgment, as I understand it, because there was nothing left to pursue at that point on the attempt to get franchises. Maybe I'm not understanding the court's decision. The futility argument was bifurcated separately determined by the court, but it was all still to do with an injunction hearing and a higher burden of proof. There was never... This is a very convoluted procedural path that was taken. True. And you have the preliminary injunction appeal, which actually gets decided after summary judgment has been granted in the lower court. And then there's a final appeal from the and that ends the case. That's why you come back to federal court, isn't it? Because the federal court had stayed the proceedings in federal court until all of the proceedings in the state court was terminated. That's correct. And then in 2004 you have a final judgment terminating the proceedings in California, affirming granting summary judgment. And in that decision in 2004 they say it would not have been futile. Why aren't you precluded from relitigating the issue of futility? Because as I read all the opinions, the futility argument was always just applied. Well, two reasons. One is the one I've already stated. I won't belabor the courts. The second one is that we were never seeking 1983 relief in state court. But that doesn't matter. They decided an issue that is related to your... You can't put a new label on the cause of action in federal court. It's true you didn't bring a 1983 action in the state courts, but a finding of fact was made in the state courts. And it's over. You can't, just by putting a new statutory label onto the cause of action, preclude attempt, rather, to relitigate the issue that you lost on and the issue that was clearly addressed in the 2004 opinion was that it wasn't futile. Well, Your Honor, if I may, I believe what was clearly addressed was, for the first time, the issue of causation that the Court of Appeal in California brought up and said, here's a real reason that it wasn't the South Coast CAB's failure to apply was the cause of the deprivation. It wasn't caused by anything the city did or didn't do. And that's something that we've addressed more in the briefing here on why that was incorrect. It's incorrect to say that the cause of it was they're not applying. Were that the case, then, the other company, AMPM Taxi, that applied, they didn't get a franchise either. It's not the applying that caused them to not get it. It's a circular argument, and we've cited it. But if you don't apply, you can't possibly get it. Well, that's true. It's the same thing as, you know, I didn't win the lottery because I didn't buy a ticket. I understand. There is a little bit of a causal connection, but under the cases that we've cited, it has to be a sufficient nexus. But we only judge cases in controversies. If I say, you know, if I had signed this contract, you would owe me $10 million. I didn't sign the contract, but I would like to bring this case and claim that you owe me $10 million. I mean, where's the case in controversy here? It's different in this case, Your Honor, because of the huge history between these clients, between these two parties. Because of my client applying all these times, and But that gets back then to Judge Gorman's comment that the state courts have reviewed this matter and have made a factual determination that it would not have been futile. Why are we not bound by that, at least in terms of collateral estoppel? Well, we're not bound under 1983 for that, because the way that I read those cases, it is not a requirement. Exhaustion. And there's also the issue of whether or not a franchise is a, quote, administrative remedy. Well, this isn't exhaustion. This is a standing issue. And we don't have jurisdiction to hear things over which there's no standing. I understand, Your Honor. I believe there is standing here because my clients are the ones that were clearly aggrieved by this. And the fact that the court, I'm sorry, the city of Anaheim didn't do anything to reopen after the permit ruling came down, even though they could have. Even though the California Court of Appeals suggested that the city of Anaheim took a break in December of 2000 to look back and figure out what... But the state court knew all of that, did it not? It knew that, but... When it considered it and nonetheless made the determination that Judge Gorman just referred to. Isn't that correct? It had been brought to its attention. It made some findings of fact that were erroneous in my opinion. Kate, Your Honor, if I may just... So you are over time. Am I over time? Yes, you are. Thank you. Good morning. Moses Johnson, Assistant City Attorney on behalf of the city of Anaheim. I'm mainly here to answer your questions because I know this is a very long case with a somewhat convoluted procedural history. One question that Ms. Cassell's argument raised for me is she suggests that they in fact asked to reopen franchise proceedings and that that would suggest that they've got standing. What they said was is they agreed to comply with some of the franchise requirements. What they said was to the city that they would agree to comply with some of the franchise requirements. There never was a formal application made to the city council once the Court of Appeal threw out our old permit ordinance. Gee, the time has passed. Will you reopen that application period to now let us apply for a franchise? There never was a formal application. If there was, she would have cited you to one. She didn't do that. I'd like to ask a question. Your opposing counsel indicated that based upon the communications committee... I can explain that, Your Honor. In the Boulder case, that somehow the local government antitrust act doesn't apply when there's a charter city. I've never heard that before. Is that an accurate statement from your perspective? No, Your Honor. What Boulder held was when the state, just like the state of California, gives charter cities home rule powers, if that was the only power that the city had, no specific statute like there is here and was cited by Judge Taylor in his decision repeatedly, government code 53075.5, if Anaheim just had home rule power, then she might have an argument that antitrust doesn't apply. It says nothing about the local government antitrust act. The city of Columbus. Correct. Here, you had a statewide statute that even applies to charter cities. It wasn't even permissive. It was mandatory. Thou shalt regulate taxis in entry into your city. We had no choice. That Boulder case and what you're just describing goes to the issue of whether they can take advantage of the Parker immunity doctrine as a locality. It has nothing to do, as I understand it, with the immunity under the, whatever it's called, LOGA. The local government antitrust act is clear. She has no authority, even assuming this court would find somehow that antitrust applies. There's no damages. And basically what she wants you to do in her brief is take the jury verdict and triple it. You can't do that. We're immune from damages. And Judge Taylor found not only was there Parker immunity, but that the Golden State Transfer case from this court in another related taxi case tossed a summary judgment. So she can't even get injunctive relief against the city. She's lost on all grounds. Unless you somehow find that Judge Taylor made a mistake in granting summary judgment, you know, his judgment should be affirmed. I have a lot of respect for Judge Taylor. I actually worked for him when he was at the Orange County Superior Court, when I started my legal career as a legal research attorney. I mean, when we were before the State Court of Appeal, the very first time where I did lose, and it's the only thing that I believe I've lost in this entire case, I talked to Plaintiff's Counsel and her client, and I begged them to apply for a franchise. But they made the decision not to apply. Because of it, they don't have standing on the franchise arguments. I mean, if you don't play the game, you can't complain later. The fact that the city may have denied them on a permit didn't give them the right to subjectively choose not to apply for the franchise. So, taking all of that out, the only thing left is the antitrust. And I believe Judge Taylor made a very detailed, written opinion as to why we went on the antitrust issue. Parker immunity applies. We have a state statute that required us to do that. Regulating entry obviously is anti-competitive. The legislative findings that go along with that statute say that. So, unfortunately, she just doesn't have a case, and hopefully after 10 years, we're done. I don't understand why simply regulating entry necessarily assumes that it's anti-competitive. You could have all sorts of regulations regarding financial stability, qualifications of people to have to operate a cab. I know in New York, of course, there's a flat-out antitrust violation, short of the immunities that they have. But I don't know why just the right to regulate implies anything about stifling competition. Well, here's how it does, Your Honor, and I'm not going to profess to understand how things are done in New York. I do understand that in New York there's medallions and stickers put on the car. It's a flat-out limitation on how many could issue. But see, that's how it's anti-competitive. But it doesn't necessarily have to be. In other words, all the state has given them the authority to do here is to regulate entry, which could mean a million things. Well, no, basically what it means is we decide who does business in the city, and as soon as we decide it's three companies versus ten, that's anti-competitive because we're not letting everybody in. And there's lots of cities that have franchises, lots of airports that have franchises. Orange County Airport has a franchise. LAX has a franchise. They don't let everybody in. In Anaheim, for Orange County, with Disneyland, we want to set certain standards, and the Court of Appeal found under the case I cited, we have the right to change to a franchise system and regulate that. And it wasn't that they didn't have a chance to be part of that. They just didn't apply to be part of it. I mean, it was open to anybody who wanted to apply. We didn't restrict them then. But we do have a right under that statute to regulate entry, and it is anti-competitive because it allows us to limit the number so that we don't have a gazillion people stacked up causing safety problems around Disneyland cherry-picking just those tourists. So she doesn't have an argument there. I mean, if you look at the legislative findings that Judge Taylor cited in his decision, I think it's pretty clear, and he even cited to a Supreme Court case that says regulating entry is anti-competitive on its face. And that's a Supreme Court case he cited in his opinion. So I really have nothing else to say unless you have some other questions. I know it's kind of a convoluted case, but I hope I laid it all out for you. Thank you. The matter just argued will be submitted. And we'll next to your argument in Pacific West. Thank you.
judges: Rymer, Smith, Korman